The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie Dollar. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
*************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provision of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured, with Constitution State Service Company as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury on October 25, 1993, pursuant to which the parties entered into the Form 21 Agreement..
5. The plaintiff's average weekly wage was $516.40, which yields a compensation rate of $344.28 per week.
6. The issues for determination are:
 a. Whether the plaintiff is entitled to total and permanent disability compensation, as a result of back, left leg, and left foot injuries, which arose out of the compensable accident.
 b. In the alternative, whether the plaintiff is entitled to additional temporary total disability compensation following the alleged unsuccessful trial return to work and the Form 28U, dated February 23, 1996.
 c. Whether the defendant on or before February 7, 1996 offered the plaintiff work suitable to his restrictions?
 d. Whether the plaintiff remains disabled to any extent from earning wages; is said disability the proximate result of the original injury by accident of October 25, 1993?
 e. What amount, if any, is plaintiff entitled to receive for partial disability?
7. The parties prepared a Stipulated Documents for Trial, which contains medical records from Dr. R. Mark Rodger, Dr. J. Robinson Hicks, Dr. W. Michael Nesbit, Dr. William O. Bell, Sports Orthopedic Rehab Center, Iredell Memorial Hospital, and Presbyterian Orthopedic Hospital. In addition, the stipulation contained rehabilitation reports from Stephen Carpenter and Nancy G. Lipscomb. The parties further stipulated five pages of medical reports from Dr. Leon Grobler into evidence.
*************
The Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a thirty-seven year old male high school graduate, who was employed as a heavy equipment operator with defendant-employer. The plaintiff's duties included laying and maintaining natural gas lines, operating backhoes and trenchers, lifting weights from one hundred and twenty pounds to one hundred and fifty pounds, sitting, standing, and climbing in and out of ditches. The plaintiff had ten years of experience with the defendant, and prior to that, worked for three and one-half years as a water and sewer maintenance worker with the City of Statesville. The plaintiff was also trained to work as a residential plumber by his father.
2. Following the admittedly compensable accident, the plaintiff sustained injuries to his back, left leg, and left foot, for which he was treated by Dr. R. Mark Rodger, an orthopedist in Statesville. Following testing, Dr. Rodger diagnosed the plaintiff as having spondylolisthesis at L4-5 and a herniated disc. The plaintiff also participated in therapy and underwent epidural steroid injections. However, after these conservative treatment measures failed to provide plaintiff with relief from pain, he agreed to undergo surgery.
3. On December 17, 1993, Dr. Rodger performed a partial diskectomy at L4-5. In a follow-up appointment on December 23, 1993, the plaintiff related that his left leg pain was better, although he still had some pain. On subsequent visits, the plaintiff's pain complaints increased, and spread to the back in an L5 nerve root distribution. Dr. Rodger ordered a nerve root infiltration, which failed to ease plaintiff's pain. On or about March 11, 1994, Dr. Rodger recommended a rehabilitation program and functional capacity examination. However, Nancy Lipscombe, the rehabilitation nurse assigned to plaintiff's claim by the servicing agent, referred the plaintiff to another doctor for a second opinion, and the plaintiff did not return to Dr. Rodger for additional treatment until 19 February 1996.
4. On April 7, 1994, the plaintiff was referred to spine specialist Dr. J. Robinson Hicks, who performed a decompressive laminectomy at L4-5 on the left, and a fusion from L3-L5 utilizing Steffee instrumentation and a bone growth stimulator and a bone graft from the left iliac crest. Post-operatively, x-rays showed a good fusion; and the plaintiff made progress in the rehabilitation program to work conditioning and work hardening. The plaintiff participated in swimming, walking, and working out on Nautilus equipment at the YMCA in Statesville on a five day per week basis in 1995 following surgery and conditioning.
5. After the plaintiff began to complain of increased pain, Dr. Hicks ordered a Pentothal pain study on January 5, 1995. This examination, under anesthesia, revealed that the plaintiff's back pain originated from physical causes, which suggested to Dr. Hicks that the fusion was not solid.
6. On February 10, 1995, Dr. Hicks performed surgery to remove the Steffee instrumentation and the bone growth stimulator. During exploration of the fusion, Dr. Hicks found that the right fusion was solid, but the left was not. Therefore, he re-fused the left side. Following the surgery, the plaintiff progressed quite well. The plaintiff was referred to rehabilitation; and in August of 1995, he underwent a functional capacity evaluation. The report dated September 27, 1995, from the Sports Orthopedic Rehab Center found the plaintiff capable of performing at the sedentary to light physical demand level.
7. On December 11, 1995, Dr. Hicks met with the plaintiff and Nancy Lipscombe, Defendants' rehabilitation nurse, to discuss the possibility of plaintiff returning to work. At that time, the plaintiff reviewed written job descriptions for a meter reader and office staff jobs, which Dr. Hicks approved as being suitable to plaintiff's physical restrictions.
8. On January 2, 1996, the plaintiff returned to work for the defendant-employer as a meter reader under a trial return to work pursuant to N.C. Gen. Stat. 97-32.1. The defendant initially had the plaintiff work a four-hour shift, in an effort to ease him back into the work setting. The plaintiff was paid $11.00 per hour.
9. After this shift, the plaintiff contacted Ms. Lipscombe, complaining that the shift had been cold and wet, and requesting to see the doctor. Ms. Lipscombe scheduled an appointment with Dr. Hicks for two days later, January 4, 1996.
10. On January 4, 1996, the plaintiff returned to Dr. Hicks. Plaintiff told Dr. Hicks that he was not able to do the meter reading job, as he could not tolerate sitting, standing, or walking for more than ten minutes at a time. Based upon Dr. Hicks' findings from the January 4, 1996 visit, he ordered a second Pentothal pain study on January 16, 1996. Pending the test, Dr. Hicks authorized the plaintiff to remain out of work.
11. On January 18, 1996, the plaintiff returned to Dr. Hicks. Dr. Hicks found the plaintiff to be at maximum medical improvement, advised the plaintiff that there was no other treatment from which he would benefit, and rated the plaintiff as retaining a twenty-five percent permanent partial impairment to his back.
12. On or about February 5, 1996, the plaintiff again attempted a trial return to work as a meter reader. This required the plaintiff to drive a truck, get in and out of the truck up to sixty times per four hour shift, and read gas meters. On February 5, the plaintiff fell down and went to the office reporting that he was unable to work. Ms. Lipscombe learned of this after calling the employer, and she offered to schedule an appointment with the doctor.
13. On February 12, 1996, the plaintiff left a message for Ms. Lipscombe that he needed to see the doctor. On February 16, 1996, the plaintiff met with Mr. Byrd and others. They offered to send the plaintiff to another doctor at that time; however, the plaintiff advised that he would see his own doctor.
14. After working for seven and one-half days as a meter reader, the plaintiff made an appointment with his original treating physician Dr. Rodger on February 19, 1996, who took him out of work for six weeks. Dr. Rodger recommended an infiltration at L5-S1 on the left side. As Dr. Rodger was moving his practice from Statesville, he referred the plaintiff to follow-up with Dr. Grobler in six weeks.
15. Plaintiff was seen by Dr. Grobler who treated him conservatively until his follow up visit on 3 June 1996.
16. On February 22, 1996, the plaintiff returned to Dr. Hicks, asking him to sign a Form 28U to reinstate his compensation after an unsuccessful trial return to work. Dr. Hicks left the examination room and walked into the hall where the Defendants' rehabilitation nurse was waiting. When Dr. Hicks returned to the examination room, he told plaintiff that he could not sign the form. The plaintiff told Dr. Hicks that he had seen two doctors in Statesville who indicated there was something on his x-ray, and Dr. Hicks advised the plaintiff that he would write to request copies of the records and x-rays but still declined to sign the Form 28U. Plaintiff returned to his original authorized treating physician, Dr. Rodger. Objective medical tests showed an abnormality that could explain Plaintiff's continued back pain. Dr. Rodger signed the Form 28U and the Full Commission finds that, under the circumstances, he was the proper person to do so. The Full Commission also finds that this was a failed return to work, not a refusal of the plaintiff to accept suitable employment as defined in N.C. Gen. Stat. § 97-32 and that plaintiff thereupon became entitled to "continuing compensation under N.C. Gen. Stat. § 97-29" pursuant to N.C. Gen. Stat. § 97-32.1. The Defendants informed Plaintiff that they would not honor the signed Form 28U. Further treatment by Dr. Leon J. Grobler clarified the origin of Plaintiff's pain and supported the findings of Dr. Rodger.
17. The plaintiff did not return to Dr. Grobler until June 3, 1996. Dr. Grobler recommended that the plaintiff have the infiltration. On June 6, 1996, the plaintiff underwent the infiltration at Davis Community Hospital. At the return visit on July 1, 1996, the plaintiff reported that his symptoms had improved after the procedure.
18. The Commission gives great weight to the opinions of Drs. Rodgers and Grobler in their treatment of plaintiff because their treatment accomplished the most toward solving plaintiff's medical problem. The Full Commission gives no weight to the evidence of Dr. Hicks, who left at least the appearance of undue influence by the rehabilitation nurse by stepping outside the presence of the plaintiff and into the presence of the rehabilitation nurse before saying whether or not he would sign the Form 28U.
19. The Deputy Commissioner erred in not considering the trial return to work pursuant to N.C. Gen. Stat. § 97-32.1 and the failure thereof. The Deputy Commissioner also erred in not considering the possibility of undue influence upon Dr. Hicks by the medical rehabilitation nurse, who apparently had a private conversation with Dr. Hicks just prior to his initial refusal to sign the Form 28U. The Deputy Commissioner also erred in not finding Dr. Rodger to be the proper party, under the circumstances, to sign the Form 28U.
*************
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of the employment on October 25, 1993. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury, the plaintiff is entitled to temporary total disability compensation from October 25, 1993 through January 1, 1996, and from January 3, 1996 through February 4, 1996.
3. As a result of the compensable injury, the plaintiff is entitled to temporary partial disability compensation at the rate of two-thirds of the difference between $516.40 per week and his actual wage for the period from January 2, 1996, and February 5, 1996 through February 12, 1996. N.C. Gen. Stat. § 97-30.
4. The plaintiff has carried the burden of proof to establish that he is entitled to additional temporary total disability compensation beyond February 19, 1996. Plaintiff shall receive total temporary disability in the amount of $344.28 per week from 19 February 1996 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29. Hilliard v. ApexCabinet Company, 305 N.C. 593, 290 S.E.2d 682(1982). N.C. Gen. Stat. § 97-32.1.
5. Pursuant to N.C. Gen. Stat. § 97-32.1 and Commission Rule 404A(2), if during the trial return to work period, the employee must stop working due to the injury for which compensation has been paid, the employee shall complete and file a Form 28U which must be completed by the authorized treating physician certifying that the employee's injury for which compensation had been paid prevents the employee from continuing the trial return to work. In the instant case, the plaintiff did comply with the statute and the Commission rule.
6. The plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §97-25. The plaintiff is entitled to have the defendant pay for medical treatment received on and after February 19, 1996 from Dr. Mark Rodger and Dr. Grobler, as such treatment was necessary. N.C. Gen. Stat. § 97-25.
*************
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendant shall pay temporary total disability compensation to the plaintiff at the rate of $344.28 per week for the period October 25, 1993 through January 1, 1996, and from January 3, 1996 through February 4, 1996. Defendant shall further pay total temporary disability at a rate of $344.28 per week from 19 February 1996 and continuing until further order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. The defendant shall pay temporary partial disability compensation at the rate of two-thirds of the difference between $516.40 per week and the plaintiff's post-injury wage while performing the meter reader job on January 2, 1996, and from February 5, 1996 through February 12, 1996.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff is hereby approved to be deducted from all sums due plaintiff and paid directly to counsel.
4. Defendant shall pay medical expenses incurred or to be incurred when bills for the same have been presented to the defendant, in accordance with the provisions of the Act. The defendant shall be responsible for the payment for medical treatment by Dr. Rodger and Dr. Grobler on and after February 19, 1996.
6. Defendant shall pay the costs, including the expert witness fee of all treating physicians.
This 26th day of March, 1998.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER